UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY DAVID HARPER

                      Plaintiff,

     v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                      Defendant.
_____

**REPORT
and
RECOMMENDATION**

**16-CV-0229V(F)**

APPEARANCES:            LAW OFFICES OF KENNETH R. HILLER
                                Attorneys for Plaintiff
                                ELIZABETH HUANGS, of Counsel
                                6000 North Bailey Avenue
                                Suite 1A
                                Buffalo, New York 14226

                                JAMES P. KENNEDY
                                UNITED STATES ATTORNEY
                                Attorney for Defendant
                                MICHELLE L. CHRIST
                                Assistant United States Attorney, of Counsel
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York 14202, and

                                STEPHEN P. CONTE
                                Regional Chief Counsel
                                United States Social Security Administration
                                Office of the General Counsel, of Counsel
                                26 Federal Plaza
                                Room 3904
                                New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Lawrence J. Vilardo on December 20, 2016.  (Dkt. No. 15).  The matter is presently before the court on motions for judgment on the pleadings, filed on December 12, 2016, by Plaintiff (Dkt. No. 14), and on March 20, 2017, by Defendant (Dkt. No. 20).

## BACKGROUND

Plaintiff Anthony Harper, ("Plaintiff" or "Harper"), seeks review of Defendant's decision denying him Disability Insurance benefits and Supplemental Security Income ("SSI") ("disability benefits"), under Title II and Title XVI of the Social Security Act ("the Act").  In denying Plaintiff's applications for disability benefits, Defendant determined that Plaintiff had a severe impairment of an affective disorder that Plaintiff's degenerative lumbar disc disease was not a severe impairment, and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 25-28). [2]  Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform a full range of work at all levels of exertion, work with limitations to performing complex tasks independently and relating adequately with others.  (R. 28).  As such, Plaintiff was found not disabled, as defined in the Act, at any time from Plaintiff's alleged onset date of August 2, 2012, through the date of the Administrative Law Judge's decision on October 23, 2014.

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits on January 9, 2013 (R. 386-92), that was initially denied by Defendant on March 15, 2013. On June 6, 2012, Plaintiff, represented by Kevin Canali, Esq. ("Canali") appeared and testified at a hearing before Administrative Law Judge Bruce R. Mazzarella ("Judge Mazzarella" or "the ALJ"), along with vocational expert ("VE") Timothy Janikowski ("Janikowski" or "VE") in Buffalo, New York. (R. 63-112). On August 5, 2014, Plaintiff, represented by Kimberly Irving, Esq. ("Irving") appeared and testified at a second hearing before Grenville W. Harrop, Jr. ("Judge Harrop" or ("the ALJ") and Janikowski. (R. 112-145).[3] The ALJ's decision denying Plaintiff's claim was rendered on October 23, 2014. (R. 23-34). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on January 19, 2016. (R. 1-5). This action followed on March 17, 2016, with Plaintiff alleging that the ALJ erred by failing to find him disabled. (Dkt. No. 1).

On December 12, 2016, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 14) ("Plaintiff's Memorandum"). Defendant filed, on March 20, 2017, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 20) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on April 10, 2017 ("Plaintiff's Reply Memorandum") (Dkt. No. 21). Oral

---

[3] The record does not indicate a reason for Plaintiff's second hearing.

argument was deemed unnecessary. Based on the following, for the reasons stated in this Report and Recommendation, Plaintiff's motion for judgment on the pleadings should be GRANTED; Defendant's motion for judgment on the pleadings should be DENIED.

## FACTS[4]

Plaintiff was born on January 21, 1974, has a master's degree in Educational Computing (R. 116), worked as a teacher and a waiter and lives in a rooming house for parolees. (R. 69). Plaintiff alleges that he has hallucinations (R. 137), and is unable to work as a result of depression, vision and back impairments. (R. 199). Plaintiff alleges that the ALJ erred in excluding Plaintiff's vision impairment as a severe impairment under step two of the disability review process. Relevant to Plaintiff's argument, on April 14, 2011, Kyle Arnaldi ("Arnaldi"), a certified orthoptic (technician who studies imbalance disorders of the eye) with the Ross Eye Institute ("Ross") in Buffalo, New York, completed an eye examination on Plaintiff and diagnosed Plaintiff with right IV (eye muscle controlled by the trochlear nerve) nerve palsy and diplopia (double vision). (R. 1211). On December 17, 2012, James D. Reynolds, M.D. ("Dr. Reynolds"), an ophthalmologist with Ross, completed a post-surgical[5] examination on Plaintiff and noted that Plaintiff reported diplopia, blurriness and glare. (R. 1213). During a follow-up visit with Dr. Reynolds on November 19, 2012, Plaintiff reported pressure-like pain over his right eye, dizziness, vertigo when looking to the right or left, and diplopia. (R. 1217). On July 17, 2014, Plaintiff returned to Dr. Reynolds with reports of super-imposed sight

---

[4] Taken from the pleadings and administrative record.
[5] The record does not indicate the exact date of Plaintiff's eye surgery.

images. Upon examination, Dr. Reynolds diagnosed Plaintiff with right hypertropia (misalignment of the eyes) and internal hypertropia both at a distance and near. (R. 1557).

1. **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ... An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A.   <u>**Standard and Scope of Judicial Review**</u>

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a

4

reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the

---

[6]Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

5

applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity. [7] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e); 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past

---

[7] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

**B.     Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 2, 2012, the date of Plaintiff's application for disability benefits.  (R. 25).  Plaintiff does not contest this determination.

### C. <u>Severe Physical or Mental Impairment</u>

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairment of an affective disorder, that Plaintiff's back impairment was not severe, and that Plaintiff did not have an impairment or combination of impairments as defined under 20 C.F.R. § 404.920(c).  (R. 25-30).  Plaintiff contends that the ALJ erred in his step two finding because the ALJ's failure to include Plaintiff's impaired vision as a severe impairment under step two of the disability review process resulted in an erroneous residual functional capacity assessment of Plaintiff.  Plaintiff's Memorandum at 11-13.  Plaintiff contends that evidence to support that Plaintiff's impaired vision should be considered as a severe impairment includes Plaintiff's visits to Dr. Reynolds between April 14, 2011 (R. 1210-11) and June 23, 2014 (R. 1554-55), Plaintiff's double vision and discomfort that remained after Plaintiff underwent eye surgery with Dr. Reynolds in November 2012 (R. 1213), and Plaintiff's testimony that he experienced double vision when looking to

the left and was able to focus out of only one eye.  Plaintiff's Memorandum at 12.  Defendant maintains that no error results from the ALJ's step two findings, as Plaintiff's limited vision did not result in any functional limitations, that despite Plaintiff's diagnosis of double vision Plaintiff retained 20/20 vision in his left eye and 20/25 vision in his right eye, and that Plaintiff failed to identify any functional limitations resulting from Plaintiff's vision impairment.  Defendant's Memorandum at 8-10.

Step two of the disability review analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and findings of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).  Step two severity determinations require ALJs to complete a careful evaluation of medical findings to inform the ALJ's judgment as to each impairment's limiting effects on the claimant's physical and mental abilities to perform basic work activities, using medical evidence to assess the effects the claimant's impairments have on the claimant's ability to complete basic work activities.  *See* S.S.R. 85-28, 1985 WL 56856, at *4 (1985).  An ALJ's failure to account for a claimant's impairment, however, does not normally require remand where substantial evidence supports the mere presence of the impairment, and the ALJ accounts for the impairment within the ALJ's residual functional capacity assessment.  *See Lowe v. Colvin,* 2016 WL 624922, at *2 (W.D.N.Y. Feb. 17, 2016).

Significantly, the applicable regulation requires ALJs to consider impairments that a claimant states that he or she has, or those "about which [the ALJ] receive[s]

9

evidence" *see* 20 C.F.R. § § 404.1512(a); 416.912(a), and in this case, the ALJ provides no indication as to whether Plaintiff's vision impairment is severe under step two of the disability analysis.  Notably, Plaintiff received treatment for his diplopia under the care of Dr. Reynolds from April 14, 2011 (R. 1210-11) until June 23, 2014 (R. 1554-55). Plaintiff testified that the surgery performed in November 2012 to correct his right eye diplopia was unsuccessful and that he continued to receive treatment from Dr. Reynolds for his double vision.  (R. 122-23).  The ALJ's step two finding on Plaintiff's diplopia is therefore without support of substantial evidence, and provides this court with no ability to review the ALJ's justification for rejecting evidence that supports Plaintiff's vision impairment in accordance with 20 C.F.R. § 404.1520(c).  Although such an error would be considered harmless had the ALJ included Plaintiff's vision impairment throughout the remaining sequential steps of the disability analysis, *see Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013) (harmless error where ALJ erred in excluding severe impairments from step two of the disability analysis but proceeded to evaluate claimant's disability through remaining steps of sequential analysis), such is not the case here.  Plaintiff's motion on this issue should be granted with remand for further evaluation of the record to afford the ALJ the opportunity to include a finding on whether Plaintiff's vision impairment is a severe impairment under step two of the disability analysis.  Should the ALJ deem Plaintiff's diplopia a severe impairment under step two, the ALJ should also be required to include Plaintiff's diplopia throughout the remaining steps of the disability analysis including posing any limitations that result from Plaintiff's diplopia to a vocational expert.

### D.      Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective disorders). In this case, the ALJ found that Plaintiff's impairments did not meet or equal § 12.04 of listed impairments. Plaintiff does not contest the ALJ's findings under step three of the disability review process.

**Residual Functional Capacity**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience,

11

and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with a mild limitation to performing complex tasks independently and relating adequately with others. (R. 28).

In this case, as discussed, Discussion, *supra*, at 9-10, the matter should be remanded for further development of the record regarding Plaintiff's vision impairment, and the ALJ should include any limitations that result from Plaintiff's diplopia in the ALJ's residual functional capacity assessment of Plaintiff, re-contacting Dr. Reynolds for additional information on Plaintiff's diplopia if required.

Plaintiff further contends that the ALJ's findings relied on evidence predating Plaintiff's relevant period for disability review, and excluded Plaintiff's consultative opinion conducted by Renee Baskin, M.D. ("Dr. Baskin") on January 31, 2011. Plaintiff's Memorandum at 13-15. Defendant maintains that the ALJ was not required to discuss medical evidence prior to Plaintiff's onset date, and correctly relied on the consultative opinion of Susan Santarpia, Ph.D. ("Dr. Santarpia") set forth during Plaintiff's relevant period of disability. Defendant's Memorandum at 12-14.

12

In order to be deemed disabled under Title II of the Act, a claimant must establish that he or she became disabled prior to the expiration of his insured status. 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1). "The Commissioner is not required to consider evidence predating or postdating the relevant time period." *See Davis v. Colvin,* 2016 WL 368009, at *2 (W.D.N.Y. Feb. 1, 2016). ALJs are not required to reconcile every conflicting piece of evidence but cannot selectively choose evidence that supports his conclusions. *See Boehnke v. Colvin*, 2014 WL 1315552, at *7 (W.D.N.Y. Mar. 28, 2014) (citing *Gecevic v. Secretary of Health and Human Services*, 882 F.Supp. 278, 286 (E.D.N.Y. 1995)).

On January 31, 2011, Dr. Baskin completed a consultative psychiatric evaluation on Plaintiff and assessed Plaintiff with minimal to no limitations in following and understanding simple directions and instructions and performing simple tasks, moderate limitations to maintaining attention and concentration, maintaining a regular schedule and learning new tasks, and marked limitations to making appropriate decisions, relating adequately with others and appropriately dealing with stress. (R. 727). Dr. Baskin noted that Plaintiff's depressive symptomology was remarkable for dysphoric moods, crying spells, feelings of hopelessness, guilt, loss of usual interests, fatigue, loss of energy, social withdrawal, and recurring thoughts of suicide and death, and further noted that Plaintiff reported nightmares and flashbacks secondary to sexual abuse as a child and as an adult and that Plaintiff reported that he suffered trauma while incarcerated. (R. 725).

In this case, the ALJ's findings included evidence from February 15, 2011 (mental health counseling with Mid-Erie Counseling and Services) until May 2, 2014

13

(visit to Erie County Medical Center ("E.C.M.C.") seeking a medication refill).  (R. 31).
Upon remand for further review under step two of the disability review process, the ALJ
should also include evidence from Dr. Baskin's consultative psychiatric evaluation of
Plaintiff on January 31, 2011, and include such evidence in the ALJ's residual functional
capacity assessment of Plaintiff.  Plaintiff's motion on this issue should be granted.

### E. Suitable Alternative Employment in the National Economy

In addition to determining whether a disability claimant has the residual functional
capacity to return to work, the Commissioner must establish that the claimant's skills are
transferrable to the new employment if the claimant was employed in a "semi-skilled" or
"skilled" job.[8]  *Id.* at 294.  This element is particularly important in determining the
second prong of the test, whether suitable employment exists in the national economy.
*Id.* at 296.  Where applicable, the Medical Vocational Guidelines of Appendix 2 of
Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden
of proof concerning the availability of alternative employment and supersede the

---

[8] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

requirement of VE testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983). As discussed, Discussion, *supra*, at 9-14, upon further evaluation of Plaintiff's diplopia, and the findings set forth in Dr. Baskin's consultative psychiatric evaluation of Plaintiff on December 31, 2011, the ALJ should include any resulting limitations from Plaintiff's vision impairment and psychological findings by Dr. Baskin in hypothetical questions posed to the VE during a new administrative hearing.

Mindful of the often painfully slow process by which disability determinations are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), and district courts may therefore "set a time limit for action by the administrative tribunal, and this is often done." *Zambrano v. Califano,* 651 F.2d 842, 844 (2d Cir. 1981).  In this case, Plaintiff filed his application for disability on December 27, 2012, testified at two administrative hearings on June 6, 2012 (R. 63-111) and August 5, 2015 (R. 112-145), and received a final decision of not disabled on October 23, 2014 (R. 20-40).  Upon reviewing the ALJ's determination, the Appeals Council denied Plaintiff's request for review on January 19, 2016 (R. 1-7).  As it has been more than five years since Plaintiff first filed his application for disability, further delay for remand is a hardship this Plaintiff should not bear.  Should the district judge agree with the recommendations in the foregoing that remand should be required, remand should also require the Commissioner to complete all proceedings related to Plaintiff's claim within 120 days of the District Judge's decision in adopting this report and recommendation.  *See Dambrowski v. Astrue,* 590 F.Supp.2d 579, 588 (S.D.N.Y.)

(imposing a time limit of 120 days for subsequent proceedings when five years had passed since Plaintiff filed his application).

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 14) should be GRANTED; Defendant's motion for judgment on the pleadings (Doc. No. 20) should be DENIED, the matter should be REMANDED for further proceedings consistent with this Report and Recommendation, and the Clerk of the Court should be instructed to close the file.

Respectfully submitted,

*/s/ Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    May 23, 2018
           Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

                                                */s/ Leslie G. Foschio*
                                            _____
                                                LESLIE G. FOSCHIO
                                     UNITED STATES MAGISTRATE JUDGE

DATED:    May 23, 2018
              Buffalo, New York